## CHARLES H. FLETCHER *versus* CALVIN WILLARD.

Where a vendor of chattels gave the vendee a writing in this form — "A. B. bought of C. D. &c. (enumerating the articles with their respective prices.) Received payment, C. D." — and the chattels were delivered to the vendee, but were returned to the vendor, and while in his possession were attached as his property, it was *held*, that upon the suggestion of the sale being fraudulent, the possession by the vendor was not conclusive evidence of fraud, and that it was competent to the vendee to prove by parol evidence, that the conveyance was a mortgage to secure a debt due to him from the vendor.

TRESPASS *de bonis asportatis* for divers cattle and farming utensils, to the value of $199.40. Plea, not guilty, with a brief statement setting forth that the defendant is sheriff of the county of Worcester, and that one of his deputies attached the chattels as the property of Joseph Fletcher, on divers writs against him, and subsequently sold them on execution, and that they were in fact the property of Joseph and not the property of the plaintiff.

At the trial, before *Shaw* C. J., it was conceded that the chattels, previously to January 14, 1830, were the property of Joseph and in his possession, at Hubbardston, in the county of Worcester, where he resided with his family and carried on a farm on his own account. The attachments were made on February 21, and March 9, 1831, and the chattels were then in the possession of Joseph. The plaintiff is Joseph's brother.

The plaintiff, to prove property in himself, gave in evidence a writing as follows: "Hubbardston, January 14th, 1830. Mr. Charles H. Fletcher bought of Mr. Joseph Fletcher, one pair of brown cattle, $50.00, &c., (specifying the cattle and farm-

.ng utensils, and affixing the prices, amounting to $199.40.) Received payment, Joseph Fletcher."

The plaintiff then called Abijah Fletcher, another brother, who testified, that he lived at Westford ; that the plaintiff, who lived at Lexington, came to Westford in February 1830, and requested him to go with him to Hubbardston and witness the delivery of the chattels, according to the foregoing bill of sale ; that the bill of sale had been executed before, and that the plaintiff carried it with him to Hubbardston ; that they arrived there in the evening, and the chattels were delivered the next morning ; that the cattle were driven out into the street and delivered, and one of the wagons was drawn out for that purpose ; that no money was paid, but the parties alluded to the sum of $200, which had been lent by the plaintiff to Joseph, at Lexington, a few weeks before, when the bill of sale was given, and for which Joseph gave his note to the plaintiff, bearing even date with the bill of sale, payable on demand with interest ; that after the delivery the cattle were driven into the barn and left in the possession of Joseph ; that Joseph was to keep them and take good care of them ; that it was understood between Joseph and the plaintiff, that the chattels were to be the property of the plaintiff until Joseph should pay him the $200, and then they were to be Joseph's again ; that the plaintiff said, if Joseph did not pay the money by the 1st of April, he should probably then be at Hubbardston, and should take the chattels, as he should want the money by that time ; and that the chattels were to be the plaintiff's, unless Joseph should redeem them by the payment of the money lent.

The father of the plaintiff testified, that the plaintiff paid $200 to Joseph in January 1830, and took Joseph's note on demand, for that sum.

Much other evidence was given, bearing upon the question, whether the conveyance was void against creditors, as a con veyance made with an intent to defeat, delay or defraud the creditors of the grantor.

The chief justice proposed to instruct the jury, in point of aw : —

1. That it was not competent to the plaintiff to show by

Fletcher
v.
Willard.

parol evidence, that a bill of sale of chattels, absolute upon the face of it, was made upon a condition or defeasance, to operate as a pledge or mortgage, as it would alter or vary the terms of a written contract by parol, which is inadmissible.

2. That as an absolute and definitive conveyance and transfer of property, it was void as against creditors, because there was no good and adequate consideration for such conveyance, and because the possession did not accompany and follow the bill of sale.

3. That if the facts reported were found by the jury, the plaintiff would not be entitled to recover in this action.

Thereupon the plaintiff became nonsuit. If these proposed instructions were wrong, and if upon the facts in the case, the plaintiff would be entitled to recover, the nonsuit was to be set aside and a new trial granted ; if otherwise, a judgment was to be entered on the nonsuit.

*Jan. 15th.*      *Hoar*, for the plaintiff, cited *New England Mar. Ins. Co.* v. *Chandler*, 16 Mass. R. 275.

*F. Dexter* and *Draper*, for the defendant, insisted, that as the plaintiff took the promissory note of Joseph Fletcher as security for the money lent, the sale of the chattels was without consideration, and therefore fraudulent as against creditors of Joseph ; and that the bill of sale being unconditional, it was not competent to the plaintiff to vary this written contract, by parol evidence of a defeasance. *Flint* v. *Sheldon*, 13 Mass R. 443 ; *Stackpole* v. *Arnold*, 11 Mass. R. 27 ; *Colman* v *Packard*, 16 Mass. R. 39.

*Oct. 17th.*      The *Court* said, that taking the testimony to be true, the plaintiff had proved a contract of sale and a delivery of the chattels ; that permitting the chattels to continue in the possession of the vendor was not *per se* fraud, as against creditors, but merely evidence of fraud, which should be submitted to the jury ; *Brooks* v. *Powers*, 15 Mass. R. 244 ; that the writing referred to as a bill of sale, was not, properly speaking, a bill of sale, but a bill of parcels ; that it did not state the terms of the sale, but was in the nature of a receipt ; that it was obvious, however, the property would pass absolutely to the plaintiff, according to this writing, unless it were explained ; that parol evidence being introduced on the part of the defend-

ant, to show that the conveyance was fraudulent, all kinds of evidence were admissible to explain the true nature of the transaction ; and that it was competent to the plaintiff to prove that the conveyance was a mortgage to secure a debt due to him from his brother Joseph.

*Nonsuit taken off and new trial granted.*